And the last case of the morning, 1521-61, United States v. Payne, and Mr. Stanton. May I proceed? Thank you. May it please the Court, Ms. Guzman, Happy New Year. My name is Bill Stanton, and I represent the appellant, Marshall Payne, in this appeal. After being charged with possessing firearms as a felon, Marshall filed a motion to suppress evidence. The district court held an evidentiary hearing at which two Chicago police officers testified. The district court denied that motion in a written opinion. Marshall subsequently entered a guilty plea conditioned upon his right to appeal that denial of the motion to suppress. He was then sentenced to 88 months in the Bureau of Prisons. Now, the government has represented that the police did know that, well, they did know Mr. Payne's identity by the time they arrived at the scene. Is that something you still contest? They did not know the identity of the caller that was speaking to Duane Payne, the individual for whom they had the wiretap authorization at the time they arrived on scene. They did not know the identity of that individual at the time they placed Marshall Payne under arrest. They did not know the identity of that after Mr. Marshall Payne was at the Holman Square police station in custody under arrest. And, Your Honor, the best evidence of that is the Chicago police officer's own reports and their testimony. If you refer to the criminal complaint, paragraph 82 in a companion case, 13 CR 155, which was Exhibit 5 and Mr. Payne's motion to suppress, the officers in that complaint state that individual C, who Marshall Payne is, was identified after he was arrested, after officers talked to him for more than an hour, after officers listened to calls 3015, 3042, 3055, then they made a voice identification of Marshall Payne. So this was done hours later at a Chicago police station when that voice identification was in fact made. So at the time they arrived at Central Park and Division where the arrest occurred, they didn't know who was the voice on those phone calls. Judge, they arrived at the Central Park and Division location where a street memorial was taking place. When they arrived, it was approximately 845 p.m., roughly an hour after these three phone calls had been intercepted. They did recognize him based on photos. Based upon a booking photo. Once he got there. The testimony was that they recognized him based upon a booking photo. There was no evidence when that booking photo was from, but that was the testimony that the booking photo that they had previously viewed, they were able to make a positive identification of Marshall Payne. Correct. When they get there, what is Marshall Payne doing? He's standing on a sidewalk next to a street memorial where there are several other individuals standing. Police officers were in covert vehicles, so they didn't stop right at the memorial. They drove around the block. When they drive around the block, Marshall Payne is now inside his vehicle, a Chrysler 300. And inside that vehicle, he's reaching towards the back seat. They don't see him holding a weapon. They don't see him holding any contraband. They simply see him reach toward the back seat and then turn around. And before they do that, though, they ran the Chrysler's license plates on the computer and learn it was registered to Marshall Payne, right? Correct. At some point in that sequence, while they're driving around the block, they do run the plates. Third time they drive around the block, Marshall Payne has now exited that vehicle. He's locked the vehicle and he's again standing on the sidewalk near the street memorial. It's at that point that several unmarked vehicles approach that area, surround Marshall Payne's vehicle, and several plainclothes Chicago police officers exit their unmarked vehicles with guns drawn and give chase to Mr. Payne. At that point, Mr. Payne clearly is not free to leave. He's seized. He runs into a drugstore down the block and is taken to the ground and placed in arrest at that point. Now, after he's placed under arrest, a search of his vehicle takes place. Mr. Payne is taken back to the Homeland Square Police Station for interrogation. Two Tec-9 firearms are recovered from the vehicle and potential incriminating statements are made by Marshall Payne back at the police station. This all happens after the arrest. Fruit of the Judges, there are no exceptions to the warrant requirement in this case. At the time that Mr. Payne was arrested, there was not probable cause to effectuate his arrest. At the time his vehicle was searched, there are no exceptions to the search warrant requirement that would allow that search to take place. Based upon the actions of the officers in this case, we are asking that you would reverse the district court's denial of the motion to suppress. Are there any questions? Thank you. Thank you. Ms. Guzman. May it please the court. Kelly Guzman on behalf of the United States. This court should affirm the district court's denial of the defendant's motion to suppress evidence and statements. Am I correct in understanding that by the time the police decided to approach Mr. Payne, they not only knew who he was by name, but they had determined that the Chrysler was registered to him? Yes, Your Honor. At the time that the police officers first approached the defendant, they had identified, they believed him to be the target of the interception was Dwayne Payne. During the interception period, they had identified two particular phone numbers that they believed belonged to the defendant, Marshall. They made that identification of the defendant as the user of those phone numbers based on the fact that he was the name subscriber to one phone number, the same phone number that made the November 26 calls, and based on the content of the prior intercepted calls where to family members referred to each other as family members. When they arrived at the scene, then before approaching the defendant, they ran the license plates on the Chrysler 300. It was registered in his name. And they also knew from prior intercepted calls that the defendant had referred to a Chrysler 300, had told Dwayne he just purchased one. And in addition, at the time that they responded to the scene, then they also saw him sitting inside that car and reaching toward the back seat, which is where he had previously told Dwayne that day the guns would be hidden. Now the district court correctly found that at that point, the defendant's presence in and possession of the car alone, in the context of those intercepted conversations, gave the officers probable cause to believe that the defendant possessed and that that car contained guns. The defendant's actions after that provided further facts in support of probable cause, because when he saw law enforcement approaching, he locked the car, he ran, he tossed the keys onto the roof of a building. Thus, the intercepted conversations, the officer's observations of the defendant at the scene, and the defendant's actions all provided more than sufficient support for the district court's conclusion. Those same facts then gave officers probable cause to search the defendant's car under the automobile exception. And as the district court pointed out, there were additional facts supporting probable cause for the search, including the fact that the costumes that the defendant had referred to in the intercepted calls earlier that day as hiding the guns were plainly visible through the car window. For all of those reasons, the district court's finding that the officers had probable causes supported by overwhelming evidence and should be affirmed. Unless the court has any further questions, I will end by asking the court to affirm the district court's judgment. Thank you. Come on back. Just to respond briefly to a couple of counsel's arguments. The key inquiry, as we feel, is when was Marshall Payne identified by the Chicago police officers as the voice on these overheard calls? The testimony of the Chicago police officers at trial, or at the hearing on the motion of the press, was an individual later confirmed to be Marshall Payne. And that later confirmation was done at a police station after his arrest. Reports that were compiled by the Chicago police officers and were attached as exhibits to these motions and replies was no subscriber for that phone number, the phone number ending in 7154, that was the key number talking to Dwayne Payne on the night of Marshall Payne's arrest. So both the testimony and the reports don't give them an idea of who the caller is that's talking to Dwayne Payne until after the fact. Now as far as references to family members on phone calls, I believe counsel's referring to hundreds of references that Dwayne Payne made on his calls to a bro. And obviously Marshall Payne is Dwayne Payne's brother. But looking at numerous calls throughout this investigation, Dwayne Payne called everybody he talked to bro or dog. And I don't think that the government would contend that whoever Dwayne called dog is actually his dog, much less whoever he called bro is his brother. That's just a generic reference that Dwayne used throughout the course of this conversation. Based upon those facts, your honors, we would ask to reverse the district court's decision and I thank you for your time today. And we thank you for taking on the appointment. Sure. And representing your clients so well. Thank you. And we thank the will be in recess until tomorrow morning, the second date of hearing for the year 2016. Thank you.